IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DONNIE W. DANIELS,**

    **Plaintiff,**

v.                                                         No. CIV. 00-259 JP/LCS

**GARY CICCOTELLI, SCOTT VINSON,
ED GILMORE, BOARD OF COUNTY
COMMISSIONERS FOR LUNA COUNTY,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiff brings four causes of action (federal constitutional free speech and due process claims and New Mexico common law claims for breach of employment contract and intentional infliction of emotional distress).[1] Each stems from events during 1998 and 1999 when Plaintiff ran for Sheriff of Luna County against Defendant Ciccotelli and lost.

Four motions are pending: (1) Plaintiff's motion for partial summary judgment (Doc. No. 59); (2) Defendants' motion in limine (Doc No. 54); (3) Defendants' motion for summary judgment (Doc. No. 55); and (4) Plaintiff's motion to disqualify Defendants' counsel (Doc. No. 70).

On May 24, 2000, at the very outset of this case and at the request of at least one of the parties, Magistrate Judge Smith filed an order waiving District of New Mexico Local Rule 7.3(a) (known colloquially as "the package rule.") Judge Smith's May 24, 2000 order states, in part:

> In addition to serving on all parties, the parties shall file directly with the Court, any motions, briefs in support, responsive briefs, reply briefs and exhibits relating to them

---

[1] Plaintiff also brings a fifth "claim" for injunctive relief.

whether filed electronically on the ACE server or in paper form. . .

Parties retain the option under D.N.M. LR-Cv 7.3(a)(3) of agreeing to unopposed extensions of time unless the extension would interfere with established case management deadlines. Timing for filing responses and replies must conform with D.N.M. LR-Cv 7.6 unless the parties agree otherwise. . .

Upon completion of the briefing process, the movant shall file with the Court and serve on all parties a "Notice of Completion" specifically identifying the pertinent motion ready for a decision and any briefs or other documents which have been filed relating to that motion.

The minutes from the Rule 16 conference held on May 24, 2000 reflect that Judge Smith fully discussed the implications of the "ACE" designation. On November 27, 2000 Judge Smith filed another order stating that "Pretrial motions, other than discovery motions, must be fully briefed and ready for decision by January 3, 2001." This Order extended the prior deadline of December 15, 2000.[2]

Notwithstanding these instructions, on November 15, 2000, Defendants served on Plaintiffs, but did not file with the court clerk, a motion for summary judgment (Doc. No. 55) as to all claims. On November 29, 2000, after having obtained leave from Judge Smith, Plaintiff filed a First Amended Complaint. The First Amended Complaint was substantially similar to the Complaint, with two important exceptions: (1) Plaintiff at various points in the First Amended Complaint describes a Manual of Operating Procedures and (2) at paragraph twenty-nine he listed several new examples of process which he claims Defendants denied him.

On December 8, 2000 Plaintiff served on Defendants, but did not file with the court clerk, a motion for partial summary judgment. (Doc. No. 59.) In support he also attached a series of

---

[2] The Initial Pre-Trial Report, filed on June 21, 2000, set the deadline for "other pretrial motions" as December 15, 2000. See Initial Pre-Trial Report at 17. The Initial Pre-Trial Order also cautioned parties that failure to abide by motion deadlines could cause the court to consider a motion "untimely, in the discretion of the Court."

supporting documents, one of which is titled "Memorandum of Law on Summary Judgment." (Doc. No. 60.) On page two of his "Memorandum of Law on Summary Judgment" Plaintiff indicated that he also intended it as a response to Defendants' motion for summary judgment. The Manual of Operating Procedures and the new allegations in the First Amended Complaint concerning the type of process Defendant claimed he was due figured prominently into Plaintiff's arguments in his "Memorandum of Law on Summary Judgment" regarding his Due Process claim and his breach of contract claim.

Also on December 8, 2000 Plaintiff served on Defendants, but did not file with the court clerk, a two-page document titled "Plaintiff's Response to Defendant's [sic] Motion for Summary Judgment." (Doc. No. 74.) That response simply listed supporting documents and indicated that Plaintiff opposed Defendants' motion for summary judgment and that he supported his motion for partial summary judgment with, inter alia, a "Memorandum of Law on Summary Judgment."

On December 20, 2000 Defendants served on Plaintiff, but did not file with the court clerk, a motion in limine (Doc. No. 54) and an attached form of order for a hearing before Judge Smith. Also on December 20, 2000 Plaintiff served on Defendants, but did not file with the court clerk, a motion to disqualify Defendants' counsel. (Doc. No. 70.) On that same day, Defendants served on Plaintiff, but did not file with the court clerk, a response to the motion to disqualify.

On January 3, 2001 Plaintiff filed his motion for partial summary judgment (Doc. No. 59) and other supporting documents, including his "Memorandum of Law on Summary Judgment," (Doc. No. 60) which was intended to support his motion for partial summary judgment and to serve as a response brief to Defendants' motion for summary judgment.

On January 4, 2001 Plaintiff served on Defendants, but did not file with the court clerk, a

3

response to Defendants' motion in limine and a memorandum in support.

On January 5, 2001 Defendants filed their motion in limine. (Doc. No. 54.)

On January 8, 2001 Plaintiff filed his response to Defendants' motion in limine and a memorandum (Doc. Nos. 67 and 68.) (Later, on January 31, 2001 Plaintiff filed this same response and memorandum a second time.) (Doc. Nos. 84 and 85.) Also on January 8, 2001 Defendants filed their motion for summary judgment (Doc. No. 55) (the response brief to which (Doc. No. 60) Plaintiff had filed on January 3, 2001.)[3]

On January 9, 2001 Plaintiff filed "Plaintiff's Response to Defendants' Motion for Summary Judgment," (Doc. No. 74) referencing six pleadings that Plaintiff also intended to file that day. Only one of these six referenced documents--Plaintiff's Statement of Issues of Fact (Doc. No. 75)--was in fact filed on January 9, 2001. The remaining five appear to have accompanied Plaintiff's "Memorandum of Law on Summary Judgment" (Doc. No. 60) filed on January 3, 2001 and were thus apparently not accepted for re-filing on January 9, 2001. Also on January 9, 2001 Plaintiff filed his motion to disqualify Defendants' counsel. (Doc. No. 70.) On January 9, 2001 Defendants filed a response to Plaintiff's motion to disqualify. (Doc. No. 72.) Defendants re-filed the identical response on January 19, 2001 (Doc. No. 77) and again on January 31, 2001. (Doc. No. 86.)

---

[3] Judge Smith has provided me with a copy of a letter which Defendants addressed to Robert M. March, Court Clerk. That letter indicates that Defendants attempted on or before January 8, 2001 to file several pleadings, including their motion for summary judgment. Handwritten notations of unidentified authorship suggest that the court clerk refused to accept certain of Defendants' pleadings because the court clerk believed them to be copies rather than originals. The court clerk received Defendants' letter on January 8, 2001. Defendants' letter is dated January 5, 2001. Even if the court clerk had accepted Defendants' pleadings on January 5 or January 8, 2001, Defendants' would not have met the January 3, 2001 deadline.

4

Over the course of two days beginning on January 8, 2001, Plaintiff filed a series of documents bearing titles such as "Plaintiff's Filing of Documents not Filed or Submitted by Defendants for Filing to the Court Re: Defendants' Motion for Summary Judgment." (Doc. No. 73.)

On January 30, 2001 Defendants filed a "Response to Plaintiff's Motion for Partial Summary Judgment." (Doc. No. 79.) Defendants' response is merely a cover page referencing a "Statement of Issues of Fact," (Doc. No. 80), a "Memorandum of Law," and an "Extract of Exhibits and Depositions." (Doc. No. 81.) The "Memorandum of Law" was not filed and the "Extract of Exhibits and Depositions" (Doc. No. 81) does not contain extracts of exhibits or of depositions.

Also on January 30, 2001 Defendants filed a "Reply to Plaintiff's Response to Defendant's [sic] Motion for Summary Judgment." (Doc. No. 82.) Defendants' reply focuses only on Plaintiff's responses to Defendants' statement of facts and does not address the legal standard to be applied or refer to any case law.

The net result is that as of January 3, 2001, the day on which "[p]retrial motions, other than discovery motions, must be fully briefed and ready for decision," the only relevant documents in the court file were (1) Plaintiff's motion for partial summary judgment, (Doc. No. 59), (2) his memorandum intended (a) as a response to Defendants' motion for summary judgment (a motion which as of January 3, 2001 had not yet been filed) and (b) as support for his motion for partial summary judgment, (Doc. No. 60), (3) "Plaintiff's Statement of Material Facts in Support of Motion for Partial Summary Judgment," (Doc. No. 61), and (4) a series of affidavits and exhibits.

As of today's date, no party has moved to extend the January 3, 2001 deadline. Only one

party has filed a reply to a response. No party has filed any "Notice of Completion," contrary to Judge Smith's May 24, 2000 Order. Trial is set for March 5, 2001.[4]

### A. Plaintiff's motion to disqualify

As the March 5, 2001 trial date fast approaches, with the case in great disarray, I will not further confound matters by disqualifying, Ms. Madrid Boyea, Defendants' counsel. Moreover, counsel for Defendants represents that Plaintiff's motion has no basis in fact. Plaintiff contends that he has "heard through rumor" that, in essence, the Defendants can no longer tolerate one another. Therefore, Plaintiff contends, Defendants' counsel's representation of one Defendant might adversely affect representation of the other Defendants. I will accept Ms. Madrid Boyea's assurance that the rumors are untrue and that all Defendants wish Ms. Madrid Boyea to continue to represent them. I will, of course, expect all counsel, as officers of the court, to continue to monitor their attorney-client relationships and to act ethically at all times. Defendants' request for sanctions with respect to Plaintiff's motion to disqualify will also be denied.

### B. Defendants' Motion in limine

Defendants move under Federal Rules of Evidence 401-04 to exclude "all evidence, argument, testimony, or other reference whatsoever to campaign funds or reports prepared by Gary Ciccotelli with regard to his election for Sheriff of Luna County, New Mexico." Plaintiff indicates that at issue is a campaign finance report Defendant Ciccotelli submitted on April 24, 1998 and a second report amending the first submitted on March 15, 1999.[5] Plaintiff claims that

---

[4] As of this date, I have also not received the pre-trial order which was due on January 20, 2001.

[5] Plaintiff cites different dates not reflected in the reports he attaches.

6

Defendant Ciccotelli's amendment of the April 24, 1998 report, the accuracy of which Defendant Ciccotelli certified under seal, suggests Defendant Ciccotelli is not credible.  Plaintiff also recognizes that Fed. R. Evid. 608(b) bars introduction of the reports to attack Defendant Ciccotelli's credibility.  Thus, to the extent Plaintiff seeks to introduce campaign finance reports in order to attack Defendant Ciccotelli's credibility, Defendants' motion in limine will be granted.  I will reserve ruling, until the conclusion of direct examination of Defendant Ciccotelli, as to whether Plaintiff can refer to alleged inconsistencies in campaign finance reports in order to attack Defendant Ciccotelli's credibility.

### C.   Dispositive motions

Plaintiff's motion to disqualify and Defendants' motion in limine are not clearly the sort of "other" motions or "pretrial" motions that were originally due, fully briefed, by December 15, 2000 (later extended to January 3, 2001).  I therefore have exercised my discretion to consider the merits of Plaintiff's motion to disqualify and Defendants' motion in limine rather than rejecting them as untimely.

Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment put the court in a more difficult position.  I prefer to decide motions on their merits.  The sloppy pre-trial motion practice in this case, including the parties' gross inattention to deadlines, has made that task nearly impossible.

#### 1.   Defendants' motion for summary judgment

According to Judge Smith's May 24, 2000 Order, motions were to be filed directly with the court.  The June 21, 2000 Initial Pre-Trial Report put the parties on notice that failure to comply with deadlines could result in denial of their motions.  According to Judge Smith's

7

November 27, 2000 Order, motions were to be fully briefed and ready for decision by January 3, 2001. Defendants filed their motion for summary judgment on January 8, 2001. That motion will be denied as untimely.[6]

### 2. Plaintiff's motion for partial summary judgment

Plaintiff timely filed a motion for partial summary judgment as to his First Amendment, Due Process, and breach of contract claims.[7]

#### a. First Amendment

To the extent Plaintiff asserts a freedom of association claim and moves for summary

---

[6] I observe that Defendants in their motion for summary judgment appear to have misidentified the legal standard that will govern the First Amendment claim. Defendants rely on Lackey v. County of Bernalillo, No. 97-2265, 1999 U.S. App. LEXIS 75 (10th Cir. Jan. 5, 1999) which involved a First Amendment claim by a non-government employee against the government. Lackey is, of course, factually distinct from this case involving an employee suffering allegedly adverse action in a government job following protected speech. Lackey applies a standard that does not consider the government employer/employee relationship at the heart of this case. Defendants offer no explanation why cases such as Barker v. City of Del City, 215 F.3d 1134 (10th Cir. 2000) (applying the Pickering/Connick analysis to case in which an assistant to a City Manager was fired following public speech and the election of a new Mayor), Jantzen v. Hawkins, 188 F.3d 1247 (10th Cir. 1999) (similar), and Bisbee v. Bey, 39 F. 3d 1096 (10th Cir. 1994) (similar), should not control instead of Lackey.

I also observe that Defendants' motion for summary judgment with respect to Plaintiff's Due Process and breach of contract claims does not address the allegations concerning those claims in the First Amended Complaint. It appears that Defendants drafted their motion for summary judgment before Plaintiff amended his Complaint to add allegations about a Manual of Operating Procedures which were quite important to Plaintiff's Due Process and breach of contract claims. Yet, Defendants did not make an effort, either before or after the motion filing deadline, to conform their motion for summary judgment to the new allegations in the First Amended Complaint.

[7] Although it was not fully briefed and ready for decision on January 3, 2001, as Judge Smith ordered that it should be, Plaintiff will not be held responsible. Plaintiff served his motion for partial summary judgment on December 8, 2000 (although he did not file it at that time in violation of Judge Smith's May 24, 2000 Order.) Defendants had sufficient time to respond or at least move for an extension by January 3, 2001. Defendants even now have not filed a legal memorandum response to Plaintiff's motion for partial summary judgment.

judgment as to it, Plaintiff's motion will be denied.  Plaintiff has presented no evidence that he was demoted or reduced in rank for associating with the Republican Party or anyone other than himself.  Plaintiff's evidence suggests that the only factor driving the employment action at issue was his "candidacy qua candidacy," and thus Plaintiff's evidence does not support a freedom of association claim.  Jantzen v. Hawkins, 188 F.3d 1247, 1252 (10th Cir. 1999).

To the extent Plaintiff asserts a free speech claim and moves for summary judgment as to it, Plaintiff's motion will be denied.  The four-part Pickering/Connick test applies.  The test is:

> 1. Whether the speech in question involves a matter of public concern.
>
> 2. If so, we must weigh the employee's interest in the expression against the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace.
>
> 3. Employee must show the speech was a substantial factor driving the challenged governmental action.
>
> 4. If so, can the employer show that it would have taken the same employment action against the employee even in the absence of the protected speech.

Id. at 1257.  Parts one and two are questions of law; parts three and four are questions of fact. Id.

Plaintiff's speech, as that of an election candidate during a campaign, is unquestionably a matter of public concern.  Id.  Whether Plaintiff has an interest in speech that outweighs that of the Defendants in maintaining an efficient and effective workplace is less clear.  Plaintiff argues that Defendants cannot prevail because they did not wait for an actual disruption in sheriff's department services.  That is not the law.  Id. at 1258.  Therefore, on the arguments presented, I cannot at this time balance the second Pickering/Connick factor in Plaintiff's favor.  Plaintiff's

motion for summary judgment as to his free speech claim will therefore be denied.[8]

### b. Due Process and breach of contract claims

Plaintiff alleges Due Process and breach of contract claims arising out of the same events. Plaintiff contends that Luna County's Manual of Operating Procedures, which took effect when Defendant Ciccotelli assumed office on January 1, 1999, states at section 12.10:

> REDUCTION IN RANK
> Employees being considered for action in this section shall be entitled to the following:
>
> A. Procedures as Outlined in the County Personnel Policy

(See Pl's Ex. 35 at 43.) The County Personnel Policy, enacted prior to the Manual of Operating Procedures, provides at section 7.3 that employees who may be demoted are entitled to a pre-determination hearing. (See Pl's Ex. 1 at 16.) Plaintiff alleges that (1) he received no notice of his transfer to patrolman prior to the transfer, (2) his move from Captain to patrolman was a

---

[8] I observe that the record alleges that Plaintiff remained at work in the Luna County Sheriff's Department without apparent disruption to the Department after losing at least one other Sheriff's election contest before November 1998. I also observe that Defendants allegedly attempted to place Plaintiff in charge of a gang task force created by Defendant Ciccotelli following Defendant Ciccotelli's campaign promise to remedy a perceived gang problem in Luna County. Plaintiff alleges that he publicly opposed the idea during his own campaign and expressed his belief that Luna County did not have a gang problem. If these allegations are true, it is very difficult to see how Defendants believed they were furthering their interest in efficient and effective law enforcement by recommending that Plaintiff head this new gang task force.

reduction in rank, and (3) he had no pre-determination hearing.[9]

Defendants admit that employees facing demotion are entitled to a pre-determination hearing. (See Ans. ¶ 8.) Defendants appear to contend that the move from Captain to patrolman was not a demotion or reduction in rank and that Plaintiff was therefore not entitled to a hearing. (See id. ¶ 15.) The Personnel Policy defines a demotion as a loss of responsibility and pay. (See Pl's Ex. 1 at § 2.11.) The Manual of Operating Procedures does not appear to define "reduction in rank" or otherwise equate that term with "demotion" as used in the Personnel Policy. Defendants' position seems to be that Plaintiff suffered no pay loss and therefore suffered no employment action for which Plaintiff would be entitled to a hearing. (See Ans. at ¶ 15.)

A party claiming breach of contract must show the existence of a contract, breach, causation, and damages. Camino Real Mobile Home Park v. Wolfe, 119 N.M. 436, 444, 891 P.2d 199, 207 (1995). A party claiming that he was deprived of due process must prove that a protected property interest exists and, if so, that he was not afforded an appropriate level of process. Hatfield v. Board of County Comm'rs., 52 F.3d 858, 862 (10th Cir. 1995). Whether an

---

[9] The claim described in section C.2.b. is consistent with the First Amended Complaint and is fairly clear from his motion for partial summary judgment. In his motion for partial summary judgment Plaintiff appears also to assert that other portions of the Personnel Policy and the Manual of Operating Procedures give rise to contract and perhaps Due Process claims. Plaintiff's argument is, almost without exception, extremely difficult to follow. (See, e.g., Memorandum of Law on Summary Judgment at 7) (arguing how he was demoted according to the Personnel Policy and Manual of Operating Procedures, then indicating that he does not rely on the definitions of demotion in these documents.) Moreover, in spite of repeated references to the Personnel Policy and the Manual of Operating Procedures, it is simply impossible to determine exactly which provisions (other than those identified in section C.2.b. of this Memorandum Opinion and Order) Plaintiff contends give rise to property interest and contractual rights. Thus, to the extent Plaintiff may be attempting to contend that he is entitled to summary judgment as to his breach of contract and Due Process claims for reasons other than an alleged lack of a pre-determination hearing, his motion will be denied.

individual has a property interest in employment protected by the Due Process Clause is a question of state law.  Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988).  The New Mexico Supreme Court in Lovato v. City of Albuquerque, 106 N.M. 287, 742 P.2d 499 (1987), for example, found that a City employee had a "continued interest" in employment by virtue of the length of his service, thirteen years, even though his position was not actually a permanent one.  In contrast, in Clark v. New Mexico Children, Youth and Families Dept., 128 N.M. 18, 25-26, 988 P.2d 888, 895-96 (Ct. App. 1999), the New Mexico Court of Appeals held that neither independent rules nor the plaintiff's two or three month employment period gave the plaintiff a constitutionally protected employment interest.

Plaintiff in this case argues that "the fact [sic] similarity of Lovato with Daniels" indicates that Plaintiff has a constitutionally protected property interest in his position as Captain.  Any factual similarity between Lovato and this case however is not so striking that I can overlook Plaintiff's failure to make an explicit factual comparison between the two cases.  Plaintiff does not indicate the precise circumstances of his employment at the rank of Captain which give rise to a property interest.  Defendants admit the allegation that Plaintiff had been a Captain since April 1995.  But Plaintiff makes no argument why four years in direct service to an elected official is like the thirteen years the plaintiff in Lovato had in an administrative and supervisory position with the City of Albuquerque.  Lovato, 106 N.M. at 288, 742 P.2d at 500.  Plaintiff also has not persuaded the court that the Manual of Operating Procedures, which may not have been in force when Plaintiff was transferred from Captain to patrolman and which Plaintiff did not know about until after he filed suit, gives rise to a constitutionally protected employment interest or one protected by a contract which Defendants breached.  Plaintiff has also not explained why

inconsistencies between the Manual of Operating Procedures and the Personnel Policy should be resolved in his favor so that I can at this stage determine whether one or both of those documents give rise to a constitutionally protected employment interest or one protected by a contract which Defendants breached.  Where a party will bear the burden of proof at trial, that party must go beyond the pleadings and designate facts so as to establish the existence of an essential element of the case to win summary judgment.  See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998); see also Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998) (commenting that a district court has no duty to sift through the record to locate support for a movant's claims).  Plaintiff has not designated facts sufficient to establish the existence of a constitutionally protected property interest or of a contract.  Therefore, I cannot conclude that Plaintiff is entitled to summary judgment as a matter of law on his due process or contract claims.[10]

IT IS THEREFORE ORDERED THAT

(1) Plaintiff's motion to disqualify Defendants' counsel is denied;

(2) Defendants' motion in limine is granted to the extent that Plaintiff seeks to introduce extrinsic evidence to impeach Defendant Ciccotelli;

(3) Defendants' motion for summary judgment is denied; and

---

[10] I observe that there does not appear to be any factual dispute that Plaintiff was removed from the position of Captain on January 1, 1999 and that he had no hearing, even an informal one, prior to that date.  I also observe that, if true, these facts appear to violate section 12.10 of the Manual of Operating Procedures and section 7.3 of the Personnel Policy.

(4) Plaintiff's motion for partial summary judgment is denied.

                                                */s/ James A. Parker*
                                    **CHIEF UNITED STATES DISTRICT JUDGE**